ST. LOUIS DREDGING COMPANY, Appellant, v. THE
CROWN COAL & TOW COMPANY, Respondent.

St. Louis Court of Appeals, December 13, 1898.

1.  **Written Contract, Loss of:** ADMISSION OF ORAL EVIDENCE.  In
the case at bar, the loss of the written contract was sufficiently
shown to admit oral testimony of its contents.

2.  ———: ———: NOTICE TO PRODUCE CONTRACT.  In the case at bar
where the copy of the contract was delivered to the manager of the
plaintiff, and of this law suit for plaintiff, and where said manager,
in the reply prepared under his instructions, and in his testimony as
a witness, denied that any contract had been made, defendant was
not required to go through the useless ceremony of serving notice on
said manager to produce the contract.

3.  ———: PRACTICE, TRIAL: MOTION TO EXCLUDE.  In the case at bar,
if plaintiff was not content with the testimony of a witness as to the
contents of the contract, it should have moved for the exclusion
of this part of his testimony; plaintiff by its silence led the trial
court to correctly presume that it waived its right to have the
contract produced.

*Appeal from the St. Louis City Circuit Court.*—HON.
HORATIO D. WOOD, Judge.

AFFIRMED.

JOS. W. FOLK for appellant.

Plaintiff was not bound by the alleged contract
between the Crown Coal and Tow Company and the
Western Coal and Tow Company regarding the reduc-
tion in the price of coal and the release of interest.
Ins. Co. v. Ins. Co., 8 Mo. App. 408; Huggins Candy
Co. v. Ins. Co., 41 Mo. App. 541; Beach on Private
Corp. sec. 248.  Sufficient grounds were not laid by
defendant to authorize the introduction of oral evidence
as to the contents of the alleged written contract,
whereby the plaintiff is alleged to have agreed not to

charge interest on said note in consideration of the reduction in the price of towing. 1 Greenl. on Ev., sec. 558; Stephens on Ev., sec. 588; Howe Machine Co. v. Stiles, 5 New Rep. 577. The alleged contract in relation to towing and release of interest proved by the defendant's oral evidence was a private agreement between parties not involved in this suit, and was not communicated to nor binding upon the plaintiff.

G. A. KOERNER and VICTOR K. KOERNER for respondent.

Mr. Kribben expressly denied the existence of the contract mentioned in the testimony as executed by Adams, Taylor and Thomas, the parties responsible for the debts of the Crown Coal Company, in the interest of the Crown Coal Company, on the one hand and the St. Louis Dredging Company on the other. Mr. Kribben's disclaimer was made in the broadest terms. So much for want of notice to produce. As to the showing that was made of loss—Mr. Bart S. Adams was the legal custodian of the paper. He testified that he had gone over all his papers when he severed his connection with the Crown Coal and Tow Company and that at that time the paper in controversy was missing. He further testified that he had on the day of the trial again examined his papers and could not find the paper. Thomas and Taylor testified that it had never been in their possession. Mr. Leathe, who succeeded Adams as custodian of the papers of the Crown Coal and Tow Company testified that he had examined all papers bearing on Crown Coal and Tow Company business that day and that he had not found the paper. It is true, as counsel states, that he had been looking at this particular time for another paper; but he also added, as counsel fails to state, that the Crown Coal and Tow Company's matters had been

in constant litigation for a number of years, that he had gone over all the papers of the company carefully in connection with these litigations, in which Thomas, Taylor and Adams were adversely interested, a great number of times and that he had never seen any such paper. We respectfully submit that under the most conservative rules the showing of loss and proper research was more than sufficient. The second point made by counsel is hardly worthy of consideration. The answer contained two separate and distinct defenses. *First*, that by an agreement, subsequent to the execution of the note, that portion of the note providing for interest was canceled, and an express agreement that the note should be void upon payment of the principal amount substituted therefor, and that there was a valuable consideration for such subsequent agreement. As the note was not in the hands of a *bona fide* purchaser, before maturity, for value, and without notice, when sued on, this subsequent agreement was perfectly valid. As no declarations of law were asked the judgment must stand, if it can be made to stand in any theory consistent with the evidence. The court may have found, and, we submit under the evidence, did find, that the note was never to bear any interest. What then becomes of the supposed errors complained of by counsel which go entirely to the second defense set up in the answer, namely, that in view of the fact that plaintiff was annoying the defendant concerning a supposed one year's unpaid interest, the defendant by an arrangement made through the only parties in interest paid a small tribute, for such it should be called, rather than have the expense of litigating the claim. We submit, however, that as to the second defense made by the answer the proof corresponded with the pleadings.   *   *   *   As to the complaint that sufficient

foundation was not laid to allow defendant to introduce parol testimony as to the contents of the contract in question we merely ask an inspection of the abstract furnished by appellant. We insist the testimony shows without question that proper search was made by the proper custodians of the paper. The cause was tried in the court below by the learned judge without the intervention of a jury. He saw and heard the witnesses and decided the case properly in favor of the defendant. No other conclusion could possibly be reached. It is respectfully submitted that this case must be affirmed.

BLAND, P. J.—The plaintiff is a Missouri corporation; the defendant an Illinois one. The suit is for an. alleged balance due on the following promissory note:.

"$5,000.00.

"BELLEVILLE, ILLINOIS, Dec. 12, 1888.

"One year after date the Crown Coal Company promises to pay to the order of John M. Holmes the sum of $5,000, value received, with interest from date at the rate of eight per cent per annum until paid.

"(Corporate Seal)    THE CROWN COAL COMPANY,

"Attest. BERT S. ADAMS, Secretary. By JOHN S. TAYLOR, President."

Indorsed "Pay W. A. Adams or order without. recourse on me.          JOHN M. HOLMES."

After the execution of the note the Crown Coal Company changed its name to the Crown Coal and Tow Company; W. A. Adams was the president and business manager of the plaintiff (and of the defendant), and of the Western Coal and Tow Company (a corporation), when this note was executed, and continued as manager of these companies until his death in March, 1891; Holmes the payee in the note was the

attorney of Adams; why he was named as payee in the note, does not appear; the note was secured by a mortgage on some mining property of the defendant. It is not denied that the loan was made by the plaintiff and that the note was its property, from its inception. The answer is a plea of payment, and sets forth in confused detail the transaction by which payment was made, the substance of which are: that Adams, the manager of the three companies, plaintiff, defendant and the Western Coal and Tow Company, entered into a contract with the Western Coal and Tow Company, to furnish said company coal at a fixed and reduced price, to wit, four and one-half cents per bushel; that afterward in consideration of the promise of defendant to furnish coal under said contract to the Western Company at a reduced rate, plaintiff agreed not to charge any interest on the note; that after the death of Adams in 1891, Bart Adams became president and manager of the Western Company and of the plaintiff, and secretary or the defendant; and that on the ——— day of January, 1893, the principal of the note was fully paid, but through inadvertance of Bart Adams the note was not canceled; that after payment the plaintiff made a claim of unpaid interest due on the note; that thereupon the parties in interest met and agreed that the matter should be adjusted as follows: "The St. Louis Dredging Company agreed to relinquish all claim for interest on said note, if the Crown Coal and Tow Company would, during the season of 1894, do the towing for the St. Louis Dredging Company at the rate of $5.50 per tow, which the said defendant did agree to do and did do."

The reply put in issue the plea in full payment, denied the alleged agreement whereby the right to collect interest was contracted away, and denies the alleged adjustment of the claim of interest after the

payment of $5,000 on the note. Other matters deny-
ing payment of interest also alleged not necessary to
notice here. None of the pleadings in the case con-
form to the statute, requiring a plain and concise
statement of the cause of action and of the defense; on
the contrary they seem to have been drawn with a view
to confuse; no offer was made to have them made
more definite and certain, and the trial court had to
grope its way through the trial as best it could. The
issues were submitted to the court, who found for the
defendant. After an unsuccessful motion for a new
trial the plaintiff appealed.

It is not disputed that $5,000 was paid on the note,
and that at the direction of W. A. Adams, Holmes,
the payee of the note, entered satisfaction on the mar-
gin of the record of the mortgage given to secure the
note; nor is it claimed by defendant that interest was
ever paid on the note except in the way of advantages
given by rebates on towing contracts and reductions in
the price of coal, as indefinitely alleged in the answer.
The three corporations, plaintiff, defendant and the
Western Coal and Tow Company, besides being all man-
aged by one man, W. A. Adams, had their office in the
same building. The directors of defendant (who were
witnesses at the trial) testified that when they borrowed
the $5,000, they got it from W. A. Adams, and did not
know nor were they informed that plaintiff was fur-
nishing the money. There is testimony tending to
prove that defendant made an agreement with W. A.
Adams in 1889, that in consideration the defendant
would sell the coal to the Western Coal and Tow
Company at four and one half cents per bushel, the in-
terest on the note would be waived, and that this agree-
ment was renewed from year to year until the note was
paid in 1893. There was also some testimony tending
to prove the alleged adjustment of plaintiff's claim for

interest after the payment of $5,000, the principal sum of the note. There is also some testimony tending to prove that before and at the time the note was given, there was an understanding between W. A. Adams and the defendant, that in lieu of interest in money the defendant should furnish the Western Coal and Tow Company coal at cost. Just how the plaintiff is bound by this agreement (if made) does not appear, unless it be inferred from the testimony that all three corporations were working together under one management, and to one end—to successfully compete in the coal trade with other coal and tow companies. No declarations of law were asked or given, and we are therefore uninformed of the view the trial court had of the legal bearing of much of the evidence offered. There was evidence offered by plaintiff in rebuttal of the testimony offered by defendant, but of the weight of the testimony and of the credibility of the witness, the trial court was the peculiar judge, and we will not disturb his finding in this kind of a case, unless it is unsupported by testimony. The towing contract alleged to have been made for the season of 1894 was said to be in writing; oral testimony was admitted of its contents, over the objection of plaintiff; the admission of this testimony is the principal contention relied on here for a reversal of the judgment. B. S. Adams testified, that when the agreement was made a copy of it was handed to him; that he had since searched for it, and that he had been unable to find it, and that it was not in his possession; that when he severed his connection with the company he turned over the company's papers to S. H. Leathe, who succeeded him as manager of the defendant company. Leathe testified that the contract had not been turned over to him, and was not with the company's papers; that he had no recollection of any such paper, and heard of the contract only by hearsay.

Edward H. Thompson, who was a director of the defendant company at the time the alleged contract was made, testified that he wrote the contract in duplicate, and gave one copy to Bart Adams, and one to Bogy, the manager of plaintiff, and was permitted to state its contents from memory, after stating the contents of the contract, he stated that he had the contract in his possession at his home in East St. Louis; that he had forgotten to bring it with him, and would send it over in "the morning." The original was not produced; nothing more was said or done about its production. Of the admission of oral evidence of the contents of the contract, and of its nonproduction, after it was shown to be in existence and within reach of the court, the plaintiff complains. The loss of the written contract was sufficiently shown to admit oral testimony of its contents; Adams testified that he had searched for it, and was unable to find it; that he turned ADMISSION of oral testimony. over the papers of the company to Leathe, his successor; Leathe testified that the contract was not with the company's papers, and that he had never seen it. The other copy was delivered to Bogy, according to Thomas' testimony, and plaintiff contends that notice should have been served on him to produce it, before admitting oral testimony of its contents.

There would be some force in this contention were it not for the fact that Bogy was both the manager of the plaintiff and of this lawsuit for plaintiff, and that both in the reply prepared under his instructions and in his testimony as a witness, he denied that any written contract had been made. In such circumstances the defendant was not required to go through the useless ceremony of serving notice on Bogy to produce the contract, before it would be permitted to offer proof of

its contents; but the plaintiff claims the court should have required the production of the original after it was shown to be in existence. In answer to this contention it may be said, that if the plaintiff was not content with the testimony of Thomas as to the contents of the contract, it should have moved for the exclusion of this part of his testimony; by its silence it led the trial court to correctly presume that it waived its right to have the contract produced, and was satisfied with the correctness of Thomas' testimony of its contents. There is testimony to support the finding of the trial court, and discovering no reversible error in the record, we affirm the judgment.

All concur. Judge BIGGS in the result.